UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

WAYNE P. M.,

                                    Plaintiff,

v.                                                                          5:24-CV-01268
                                                                                  (ML)

COMMISSIONER OF SOCIAL SECURITY,

                                    Defendant.

_____

APPEARANCES:                                          OF COUNSEL:


OLINSKY LAW GROUP                          HOWARD D. OLINSKY, ESQ.
 *Attorneys for Plaintiff*
250 South Clinton Street, Suite 210
Syracuse, New York 13202


U.S. SOCIAL SECURITY ADMIN.              VERNON NORWOOD, ESQ.
 *Counsel for Defendant*
6401 Security Boulevard
Baltimore, Maryland 21235

**MIROSLAV LOVRIC**, United States Magistrate Judge

## MEMORANDUM-DECISION and ORDER

Plaintiff Wayne P. M. ("Plaintiff"), brings this action pursuant to 42 U.S.C. §§ 405(g)

seeking judicial review of the final decision of the Commissioner of Social Security

("Defendant" or "Commissioner"), denying his application for Supplemental Security Income

("SSI") benefits. (Dkt. No. 1.)  This case has proceeded in accordance with General Order 18 of

this Court which sets forth the procedures to be followed when appealing a denial of Social

Security benefits.  Currently before the Court are Plaintiff's motion for judgment on the

pleadings (Dkt. No. 13) and Defendant's motion for judgment on the pleadings (Dkt. No. 17).

1

For the reasons set forth below, Plaintiff's motion for judgment on the pleadings is denied and Defendant's motion for judgment on the pleadings is granted. The Commissioner's decision denying Plaintiff's disability benefits is affirmed, and Plaintiff's Complaint is dismissed.

## I.      RELEVANT BACKGROUND

### A.      Factual Background

Plaintiff was born in 1998, making him 13 years old on the alleged onset date, 22 years old on the application filing date, and 25 years old at the time of the unfavorable ALJ decision. (Administrative Transcript ("T.") 14-30, 234-40.)  Plaintiff has a high school education and subsequently obtained trade school certification in masonry. (T. 48, 275, 563, 621.)  Plaintiff's past work includes jobs as a fast food worker, housekeeper in a hospital, warehouse laborer, and retail stockperson. (T. 27-28, 62.)  During the relevant period under review, he lived with his mother, stepfather, girlfriend and child. (T. 44.)

The record includes Plaintiff's medical history.  Rather than summarizing the records at the outset, I will refer to the pertinent records during my discussion of Plaintiff's arguments.

### B.      Procedural History

On August 20, 2021, Plaintiff filed an application for SSI benefits alleging disability beginning October 3, 2012 due to a learning disability, epilepsy, migraines, and depression. (T. 234, 274.)  Plaintiff's application was denied initially on January 11, 2022 and on reconsideration May 2, 2022. (T. 82, 101.)  Plaintiff requested a hearing, which was held on October 30, 2023, before Administrative Law Judge ("ALJ") Kenneth Theurer (T. 37-66, 140.) The ALJ issued an unfavorable decision on December 22, 2023. (T. 14-30.) This became the Commissioner's final decision on August 29, 2024, when the Appeals Council denied Plaintiff's request for review. (T. 1-6.)

C.    **The ALJ's Decision**

As an initial matter, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the application date. (T. 17.)  At step two, the ALJ found that Plaintiff had the following severe impairments: "epilepsy, learning disorder, and depressive disorder." (*Id*.) At step three of the evaluation, the ALJ found that Plaintiff's impairments either singly or in combination did not meet or medically equal the severity of a listed impairment, including Listing 11.00 (neurological disorders), Listing 11.02 (epilepsy), and Listing 11.18 (traumatic brain injury). (T. 19.)  Next, the ALJ found that Plaintiff could perform work at all exertional levels with certain nonexertional limitations. (T. 20-22.)  Specifically, the ALJ found that Plaintiff:

> can never climb ladders, ropes, or scaffolds; should avoid work at unprotected heights or in conjunction with dangerous machinery; should not operate a motor vehicle; requires work limited to simple, routine, and repetitive tasks; requires . . . a work environment free of fast paced production requirements as would be experienced on an assembly line; requires work involving only simple, work-related decisions; and requires few, if any, workplace changes.

(T. 22.)

In making the RFC determination, the ALJ stated he considered all of Plaintiff's symptoms, and the extent to which those symptoms could "reasonably be accepted as consistent with the objective medical evidence and other evidence, based on requirements of" 20 C.F.R. § 416.929 and Social Security Ruling ("SSR") 16-3p. (*Id*.)  The ALJ further stated that he considered opinion evidence and prior administrative medical findings in accordance with 20 C.F.R. § 416.920(c). (*Id*.)  The ALJ also considered Plaintiff's subjective complaints and found the "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record."

At step four, "[p]ursuant to the expedited process under 20 CFR 416.920(h)," the ALJ did

3

"not make a finding as to whether the claimant can perform any past relevant work." (T. 27.) After considering Plaintiff's age, education, and RFC, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (T. 28.) Accordingly, the ALJ found that Plaintiff had not been under a disability since May 26, 2021, the date the application was filed. (T. 29.)

### D.    Issues in Contention

Plaintiff argues the ALJ erred in finding Plaintiff's migraines and headaches were not a medically determinable impairment, resulting in an RFC that did not encompass all of Plaintiff's functional limitations. (Dkt. No. 13 at 6-12.)  The Commissioner contends that the ALJ's disability determination, including the step two determination regarding Plaintiff's migraines and headaches, was supported by substantial evidence. (Dkt. No. 17 at 8-11.)

## II.    APPLICABLE LEGAL STANDARDS

### A.    Standard of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citations omitted); *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). A reviewing court may not affirm the ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson*, 817 F.2d at 986.

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g) (2015); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). To facilitate the

4

Court's review, an ALJ must set forth the crucial factors justifying her findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984); *Roat v. Barnhart*, 717 F. Supp. 2d 241, 248 (N.D.N.Y. 2010) (Kahn, J.). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted). It must be "more than a mere scintilla" of evidence scattered throughout the administrative record. *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Featherly*, 793 F. Supp. 2d at 630.

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citations omitted). Where substantial evidence supports the ALJ's findings they must be sustained "even where substantial evidence may support the plaintiff's positions and despite that the court's independent analysis of the evidence may differ from the [ALJ's]." *Rosado*, 805 F. Supp. at 153. In other words, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

**B.    Standard for Benefits**

To be considered disabled, a plaintiff-claimant seeking benefits must establish that he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than twelve months." 42

U.S.C. § 1382c(a)(3)(A) (2015). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* § 1382c(a)(3)(B).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. § 405(a)), the Social

Security Administration ("SSA") promulgated regulations establishing a five-step sequential

evaluation process to determine disability. 20 C.F.R. § 416.920(a)(4) (2015). Under that five-step

sequential evaluation process, the decision-maker determines:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or

non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540

U.S. 20, 24 (2003).

### C.    Step Two Determination

At step two of the sequential evaluation process, the ALJ must determine whether the

plaintiff has a severe impairment that significantly limits his or her physical or mental ability to

do basic work activities. *See* 20 C.F.R. §§ 404.1520(c); 416.920(c). This step is limited to

"screen[ing] out *de minimis* claims." *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995). This

6

is done by first determining whether the claimant has a medically determinable impairment, then examining its severity. *See* 20 C.F.R. § 404.1521. A medically determinable impairment ("MDI") "must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques." *Id.* Thus, under the regulations, "a physical or mental impairment must be established from an acceptable medical source," and cannot rely on a "statement of symptoms, a diagnosis, or medical opinion to establish the existence of an impairment(s)." *Id.*

Regarding the severity of any MDIs, the "mere presence of a disease or impairment[;]' or establishing that a person has been diagnosed or treated for a disease or impairment" is not, by itself, sufficient to render it "severe." *Coleman v. Shalala*, 895 F. Supp. 50, 53 (S.D.N.Y. 1995). A finding of "not severe" is appropriate if the "medical evidence establishes only a slight abnormality . . . which would have no more than a minimal effect on an individual's ability to work[.]" *Bowen v. Yuckert*, 482 U.S. 137, 154 n.12 (1987). The plaintiff bears the burden of presenting evidence establishing that an impairment is both medically determinable and severe. *See DeChirico v. Callahan*, 134 F.3d 1177, 1180 (2d Cir. 1998) (citing *Berry v. Schweiker*, 675 F.2d 464, 467); *see also* 20 C.F.R. § 404.1512(a).

## III. ANALYSIS

The ALJ noted at step two that Plaintiff "alleged severe headaches and/or migraines that occur four times per week with dizziness, vision problems, nausea, and pain that caused him to stop working." (T. 18 (citing T. 274, 292, 348, 563.)) Further, the ALJ noted the state agency medical opinions found Plaintiff had a severe migraine disorder. (T. 18 (citing T. 74, 93.)) Despite this, the ALJ concluded that Plaintiff "does not have a primary headache disorder as defined in Social Security Ruling 19-4p for any 12-month period at issue in this case based on

7

the record as a whole." (T. 18.)  The Plaintiff contends it was error when the "ALJ rejected the credibility of Plaintiff's complaints concerning migraines due to a lack of objective evidence and that Plaintiff had failed to seek MRI scans or laboratory testing to exclude alternative medical and psychiatric causes of his symptoms." (Dkt. No. 13 at 8.)  The Commissioner contends the ALJ conducted the required analysis pursuant to SSR 19-4p before determining that Plaintiff's headaches were not a medically determinable impairment, and so the ALJ's finding is supported by substantial evidence. *See* Dkt. No 17 at 8-12.  This Court concurs with the Commissioner, and finds no grounds for remand.

SSR 19-4p establishes the SSA's framework for evaluation of "migraines, tension-type headaches, and cluster headaches."  SSR 19-4p, "Titles II and XVI: Evaluating cases involving primary headache disorders," 2019 WL 4169635, at *1 (S.S.A. Aug. 26, 2019).  It notes that the medical community distinguishes "primary headache disorders," which "occur independently and are not caused by another medical condition," from "secondary headaches," which are typically "symptoms of another medical condition[.]" *Id.* at *3.  Relevant to this proceeding, SSR 19-4 explains that these underlying medical conditions are viewed as the MDI, rather than the secondary headaches.  *See id.*

To establish a primary headache disorder as an MDI, there must be objective medical evidence from an acceptable medical source. *Id.* at 5.  A diagnosis or symptom statements alone is insufficient. *See id.* at *5.  SSR 19-4p notes that physicians diagnose a primary headache disorder "only after excluding alternative medical and psychiatric causes of a person's symptoms."  It further notes the potential utility of "headache journals," but explains that such journals are not required.  It further cautions that "[w]hile imaging may be useful in ruling out other possible causes of headache symptoms, it is not required for a primary headache disorder

diagnosis.

Applying SSR 19-4p, the ALJ noted "[a]lthough there are currently no specific diagnostic laboratory tests used to identify primary headache disorders, the claimant has not sought MRI scan of the brain or other additional laboratory testing to exclude alternative medical and psychiatric causes of the claimant's symptoms." (T. 18.)  The ALJ cited a number of other factors that led him to conclude that Plaintiff's headaches were not an MDI: the lack of direct observation or documentation of headache events by a medical source; the overlap between the medications used to treat Plaintiff's headaches and his epileptic seizures; and the shared symptoms, including vision problems, nausea, and pain, that suggest Plaintiff's headaches were secondary to his epilepsy.  (T. 18-19, 292, 348, 921.)

The record includes a headache log kept by Plaintiff for one month but otherwise does not include any log or journal to substantiate Plaintiff's testimony regarding the frequency and intensity of his headaches, or his response to treatment. (T. 18, 295.)  Still, the step two analysis cited a number of medical and self-assessments supportive of the ALJ's conclusion that Plaintiff's migraines and headaches were secondary to his epilepsy. (T. 18-19.)  During his neurologic consultative examination with Rita Figueroa, M.D., Plaintiff reported that the trigger for his migraines "varies," and ranged from dehydration, hunger, and sleep deprivation," but sometimes occurred "just because." (T. 18, 895.)  Elsewhere, Plaintiff described his migraines as connected to his seizures. (T. 18, 231, 293.)  Multiple neurological exams, including evaluation of the cranial nerves, were unremarkable. (T. 18, 574, 848, 897, 928.)  Further, physicians frequently described Plaintiff's headache symptoms were noted to be "under good control" or "well-controlled" with medication.  (T. 19, 709, 729, 740.)

The ALJ's RFC determination did not include any specific limitations related to

Plaintiff's migraines or headaches, but this does present grounds for remand. Because the ALJ had substantial evidence to support his finding that Plaintiff's migraines and headaches were not an MDI, he was not obligated to take those impairments into account in the RFC. *See Parker-Grose v. Astrue*, 462 F. App'x 16, 18 (2d Cir. 2012) (summary order) (citing 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe [ ]' ... when we assess your [RFC] ..."); *Hopson v. Comm'r of Soc. Sec.*, 579 F. Supp. 3d 501, 517 (S.D.N.Y. 2022) (". . . the ALJ properly found that lupus was not one of Hopson's medically determinable impairments. Accordingly, there could be no error in not taking lupus or its alleged effects into account when determining Hopson's RFC.")

Still, the ALJ did discuss Plaintiff's migraines and headaches as part of his evaluation of Plaintiff's epilepsy symptoms, before electing to exclude them from the RFC. *See Christopher C. v. Comm'r of Soc. Sec.*, No. 5:24-CV-01593 (BKS/ML), 2026 WL 770358, at *4 (N.D.N.Y. Feb. 26, 2026)*, rep't and rec. adopted,* 2026 WL 769190 (N.D.N.Y. Mar. 18, 2026) (("Having considered the treatment and examination records related to those severe and non-severe impairments, the ALJ's ultimate decision to exclude any specific limitations attributable to them does not present grounds for remand."). Thus, even if the ALJ erred in his analysis of Plaintiff's severe and non-severe impairments, such error would be harmless. *See Guerra v. Comm'r of Soc. Sec.*, No. 1:16-CV-00991 (MAT), 2018 WL 3751292, at *3 (W.D.N.Y. Aug. 7, 2018) ("Moreover, '[c]ourts have developed a specialized variant of harmless-error analysis with respect to Step 2 severity errors in social security proceedings. . . . [W]hen an administrative law judge identifies some severe impairments at Step 2, and then proceeds through [the] sequential evaluation on the basis of [the] combined effects of all impairments, including those erroneously found to be non severe, an error in failing to identify all severe impairments at Step 2 is

10

harmless.'") (quoting *Snyder v. Colvin*, No. 5:13-CV-585 GLS/ESH, 2014 WL 3107962, at *5 (N.D.N.Y. July 8, 2014)), *aff'd*, 778 F. App'x 75 (2d Cir. 2019)); *see also Grant v. Saul*, No. 3:18-CV-00261 (KAD), 2020 WL 1307106, at *6 (D. Conn. Mar. 18, 2020) (explaining that an ALJ is required to consider non-severe impairments when fashioning the RFC).

Published Social Security Rulings like SSR 19-4 are "binding on all components of the Social Security Administration." *Banyai v. Berryhill*, 767 F. App'x 176, 178 (2d Cir. 2019) (citing *Heckler v. Edwards*, 465 U.S. 870, 873 n.3, 104 S.Ct. 1532, 79 L.Ed.2d 878 (1984)); *see also Jessica Lynn V. v. Comm'r of Soc. Sec.*, No. 6:24-CV-43 (BKS/CFH), 2024 WL 5454786, at *7 n.6 (N.D.N.Y. Dec. 2, 2024), *rep't and rec. adopted*, 2025 WL 542566 (N.D.N.Y. Feb. 19, 2025) ("Social Security Rulings do not have the force of law but are binding on 'all components of the Social Security Administration.'") (quoting *Heckler*). The ALJ complied with SSR 19-4 by considering the lack of any significant objective findings, evidence that Plaintiff experienced some relief from conservative treatment, and inconsistencies in Plaintiff's statements regarding the severity of his symptoms before concluding that Plaintiff's headaches were secondary in nature and did not meet the criteria for an MDI of primary headache disorder. *See* 20 C.F.R. § 1421; SSR 19-4p, 2019 WL 4169635, at *5; *Linda M. v. Kijakazi*, No. 3:21-CV-57 (DJS), 2022 WL 4550810, at *7 (N.D.N.Y. Sept. 28, 2022). ("It is therefore clear that not only is an ALJ <u>entitled</u> to rely on objective evidence to find a primary headache disorder as a medically determinable impairment, but such evidence is in fact <u>required</u> by the regulations."); *Butler v. Colvin*, No. 6:15-CV-00455 (MAD), 2016 WL 3951153, at *4 (N.D.N.Y. Jul. 20, 2016) (affirming ALJ's determination that the plaintiff's headaches were not medically determinable when based on symptom complaints). The remainder of its decision was likewise supported by substantial evidence, resulting in an RFC and disability determination that do not present

grounds for remand.

  **ACCORDINGLY**, it is

  **ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 13) is **DENIED**; and it is further

  **ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 17) is **GRANTED**; and it is further

  **ORDERED** that the Commissioner's decision denying Plaintiff disability benefits is **AFFIRMED**; and it is further

  **ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.


Date: March _27_, 2026
   Binghamton, NY

             Miroslav Lovric
             U.S. Magistrate Judge